# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

JUL 21

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Disclosure of Location-Based Services for AT&T Cellular Telephone Number 202-704-2704

Case No. 1:17sw 435   1:17ec 1407

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Facilities belonging to service provider AT&T associated with cellular telephone number 202-704-2704. This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(a) and Fed. Rule of Crim. P. 41.

located in the ____Unknown____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:
Disclosure of location-based electronic communications data for AT&T cellular telephone number 202-704-2704.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846 | Conspiracy to distribute cocaine and heroin. |

The application is based on these facts:
See attached Affidavit.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jonathan F. Earle, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____07/21/2017____

/s/
John F. Anderson
United States Magistrate Judge
*Judge's signature*

City and state: Alexandria, Virginia

Hon. John F. Anderson, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A SEARCH WARRANT AND ORDERS PURSUANT TO 18 U.S.C. §§ 2703(c)(1)(A) AND 3122(a)(1) FOR: (1) THE DISCLOSURE OF LOCATION BASED SERVICES; (2) DISCLOSURE OF STORED TELECOMMUNICATIONS RECORDS FOR TELEPHONE NUMBER **202-704-2704** ; AND (3) INSTALLATION OF A PEN REGISTER AND TRAP AND TRACE DEVICE | **UNDER SEAL**<br><br>1:17-sw- 435 |
|---|---|

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Jonathan F. Earle, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") since 2009. I have experience investigating narcotics and firearms trafficking offenses.

2. This affidavit is submitted in support of an application for the disclosure of location-based electronic communications data and an order for the installation of a pen register and trap and trace device for a cellular telephone number **(202) 704-2704** (as defined in the Application and hereinafter referred to as the "SUBJECT TELEPHONE NUMBER"), pursuant to Federal Rule of Criminal Procedure 41(d)(1) and Title 18, United States Code, Sections 2703(c) and 3122(a). The SUBJECT TELEPHONE NUMBER is serviced by AT&T and is used by TYREE HENDERSON. As set forth in greater detail below, I believe there is probable cause to support the determination that HENDERSON is a member of a conspiracy to distribute

marijuana, prescription pills, and other controlled substances and that members of the conspiracy have engaged in violent crimes to further their conspiracy to distribute controlled substances within the Eastern District of Virginia and elsewhere. Further, I submit there is probable cause to support the determination that HENDERSON uses the SUBJECT TELEPHONE NUMBER to conduct narcotics trafficking.

3. This affidavit does not contain every fact known to me regarding this investigation, but rather contains information necessary to demonstrate probable cause in support of the above-referenced search warrant. In addition, I set forth the following facts showing that there are sufficient grounds to believe that the disclosure of location-based services and the installation of a pen register and trap and trace device on the SUBJECT TELEPHONE NUMBER, will be relevant and material to an ongoing criminal investigation.

4. The facts and information contained in this affidavit are based on my personal knowledge and information obtained from federal and state law enforcement officers. All observations referenced in this affidavit that were not personally made by me were relayed to me by the person(s) who made such observations or in reports that detailed the events described by that person(s).

## PROBABLE CAUSE

A. <u>Background on the Investigation</u>

5. In June of 2017, a cooperating source ("CI-1") reported to the Alexandria Police Department ("APD") Violent Crime Unit and ATF that HENDERSON and an individual ("Co-Conspirator 1') were involved in the distribution of marijuana and other controlled substances in Alexandria, Virginia, which is located in the Eastern District of Virginia. CI-1 identified HENDERSON and Co-Conspirator 1 as members of 41 Zone, a local street gang based out of

Fairfax County, Virginia. Further, in March 2017, HENDERSON was the victim of a shooting incident in Alexandria. HENDERSON used the SUBJECT TELEPHONE NUMBER to speak to law enforcement about this incident. CI-1 reported to law enforcement that HENDERSON was shot due to a "beef" between HENDERSON and members of local street gang identified as "Steven's Gang/Front Street." C-1 reported this "beef" was over the distribution of controlled substances.

6. CI-1 will be referred to in the masculine gender, regardless of CI-1's true gender. He was arrested in 2014 for possession of a controlled substance and in 2015 and 2016 for possession with intent to distribute a controlled substance, in Alexandria, VA. CI-1 is cooperating with law enforcement in return for consideration for his pending charges. CI-1's information was unsolicited and has been corroborated through other witnesses. Therefore, CI-1's information has been deemed reliable.

7. In July 2017, another cooperating source ("CI-2") reported to ATF that HENDERSON and "Co-Conspirator 1" are involved in a "beef" with members of "Steven's Gang/Front Street."

8. CI-2 will be referred to in the masculine gender, regardless of CI-2's true gender. He was arrested in 2014 in Washington DC for unauthorized use of a vehicle and in 2017 he was arrested for the straw purchase of firearms in the Eastern District of Virginia. CI-2 is cooperating with law enforcement in return for consideration for his pending charges. CI-2's information has been corroborated, and has therefore been deemed reliable.

9. Based on these reports and other information, ATF and APD have an ongoing violent crime investigation into HENDERSON, Co-Conspirator 1, and other gang members with in Alexandria.

B. <u>Review of HENDERSON Social Media</u>

10. Between March 2017 to June 2017, law enforcement have observed videos on a "Snap Chat" account under the username "NolackingTY." This account has been identified as belonging to HENDERSON. Law enforcement have observed several videos of HENDERSON in possession of items that appear to be firearms and controlled substances. The suspected controlled substances are in large bags. Based on my training and experience, I know that this quantity of controlled substances is usually not for personal consumption, but rather distribution quantities.

C. <u>National Integrated Ballistic Information Network (NIBIN) Result for an April 11, 2017 Shooting in Alexandria</u>

11. In June 2017, CI-1 reported to law enforcement that HENDERSON and Co-Conspirator 1 were involved in a shooting in Alexandria on April 11, 2017. Then, on July 5, 2017, law enforcement received information from the District of Columbia Department of Forensic Sciences Firearms Examination Unit in reference to 9mm shell casings recovered during a "Weapon Offense" at 4754 Kenmore Ave, Alexandria, on April 11, 2017, and 9mm shell casings recovered from an Assault with a deadly weapon at 4700 South Capitol Street (Shell Gas Station) in the Metropolitan Police Department's 7th District on May 20, 2017. The Firearms Examination Unit stated the 9 mm shell casings recovered from the two shooting incidents were microscopically examined and were identified as having been fired from same firearm.

12. Moreover, law enforcement have reviewed surveillance video from the shooting on May 20, 2017. In the video the suspected shooters have the same physical characteristics as HENDERSON and Co-Conspirator 1. Additionally, the firearm observed in the surveillance

4

video is the same shape and size and has unique characteristics of a firearm HENDERSON has displayed on social media.

D. Search Warrant Executed on Tyree Henderson's Vehicle

13. On July 7, 2017, APD officers observed HENDERSON driving a vehicle in the area of Kenmore Avenue, Alexandria. A DMV query of the vehicle revealed it was registered to an individual identified in the past to be HENDERSON's girlfriend. APD officers observed HENDERSON park the vehicle and walk away. HENDERSON and another male walked from the vehicle past an off-duty APD officer. The off-duty APD officer reported HENDERSON and other male had a strong odor of marijuana. While the vehicle was parked, APD officers smelled a strong odor of marijuana from the vehicle and observed, in plain view, digital scales and suspected marijuana in the vehicle. Based on my training and experience, I know that drug distributors used digital scales to weigh controlled substances before they package the controlled substances for distribution. In response to this discovery, an APD K-9 officer responded to the vehicle and during an external sweep of the vehicle, the K-9 alerted to the presence of a controlled substance. APD officers seized the vehicle and obtained a state search warrant. During the execution of state search warrant, APD officers seized approximately thirty-seven (37) grams of suspected marijuana from the vehicle. There was a large empty vacuum-sealed bag in the vehicle. Based on my training and experience, I know that drug distributors use vacuum-sealed bags to transport and distribute controlled substances. The suspected marijuana was field tested by APD officers and tested positive.

14. On July 9, 2017, APD offices obtained arrest warrants for HENDERSON and the other male for Possession with Intent to Distribute Marijuana. Then, on July 11, 2017, HENDERSON was arrested in Fairfax County for the outstanding warrant. After his arrest,

HENDERSON provided the SUBJECT TELEPHONE NUMBER as his phone number to investigators.

E. Use of Location-Based Services to Further the Investigation

15. I believe that a court order authorizing the installation of a pen register trap and trace device, the disclosure of stored records (including historical cell site information), and the disclosure of location-based services will assist agents in determining the locations that HENDERSON frequents and therefore assist agents in identifying locations where HENDERSON meets to conduct his drug trafficking activity. I submit it may also assist investigators in identifying HENDERSON's co-conspirators as well as where HENDERSON or his source of supply may store their drugs, drug-related paraphernalia, and proceeds earned from their sale of drugs.

16. Cell-sites only disclose the location of an Antenna Tower. Like plugging a conventional phone into a "wall-jack," the wireless telecommunications providers quickly and accurately detect which one of their "wall-jack" cell-sites is accessed by a mobile phone; and, armed with knowledge of that cell-site's physical tower location, agents can inferentially approximate the SUBJECT TELEPHONE NUMBER's location, at best to within several square miles, at the beginning and end of each call. This approximated location can be used to corroborate the observations of surveillance agents and to anticipate future movements and locations by establishing the target's habit or pattern. For example, if a target's first and last wireless calls of the day occur in the same cell site, then the geographic footprint of the area covered by that cell-site should correspond to the general location where the target is residing, working or sleeping. If there are several known addresses—as identified through subscriber

records derived from the pen/trap or otherwise—in that same cell-site's coverage area, then there is a good possibility that the target is residing with or visiting one of those individuals.

17. While the information acquired by cell-site analysis (which is created and stored in the ordinary course of business each and every time the mobile phone makes or receives a call) can be coarse and non-specific, information obtained from the telecommunications providers using their "Enhanced 911" tools (such as GPS fixes, triangulation, cell-site "pings," received signal strength indicator (RSSI), and timing offset analysis) can be much more precise. More precise information allows investigators to get closer to the actual handset. Some of these E-911 tools are not records that exist in the ordinary course of business and often are not created unless the user of the phone dials "911." Thus, unless a provider has reason to believe a mobile phone's user is in distress (typically by virtue of a 911 call), telecommunications providers will require a court order to create, record, and disclose these electronic records to law enforcement. I submit that there is probable cause to support a court order to require the creation of these records and to compel the disclosure of these records. These records, however, are rarely so precise as to establish the phone's presence in a particular house or apartment and cannot be relied upon as a sole basis for attempting warrant service at any particular location.

18. Whether the ATF receives real-time cell-sites or requests the provider disclose E-911 location information, no government "device" is involved. Rather, cell-site records are passed contemporaneously with pen register and trap and trace data from the accessing cell site to the local Mobile Telephone Switching, which forwards the information to the Provider's central collection facility (*i.e.* their law enforcement relations/court order bureau offices). From there, the provider authorizes the data stream for release to the ATF through its CALEA-compliant network.

19. Similarly, when the ATF requests E-911 tools in an attempt to locate the physical handset, no government "device" is used. Rather, the provider will query the phone, which must be on, to ascertain its location through a two-way data dialogue. That information is captured and stored by the provider and passed on to the Investigative Agency orally or in writing (e.g. email or fax).

20. Once I receive an order for the type of information requested herein, it is served upon the SUBJECT TELEPHONE NUMBER's Provider. Once received, it is catalogued and assigned to an electronic surveillance representative, who, based on caseload, will "provision" the SUBJECT TELEPHONE NUMBER for delivery in the appropriate "switches," thereby instructing those switches to forward the information to the Provider's central collection point. "Provisioning" can occur at any time and, except for exigent cases, is dictated solely by the Provider. Thus, the ATF cannot control whether the Order will be electronically implemented during day or night.

21. Revelation of the attempt to locate and investigate HENDERSON through use of the SUBJECT TELEPHONE NUMBER would greatly compromise our ongoing investigation. If alerted to the existence of the ongoing investigation, HENDERSON will likely change patterns, change phones, resort to other communications media, destroy evidence, and flee.

## CONCLUSION

22. Based on the facts and circumstances stated above, I submit that there is probable cause to believe that the above-described drug violations have occurred, are presently occurring, and will continue to occur; and that HENDERSON has used, is using, and will continue to use the SUBJECT TELEPHONE NUMBER in furtherance of his illicit drug trafficking, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. I further believe that the installation

of a pen register trap and trace device, the disclosure of stored records (including historical cell site information), and the disclosure of location-based services will permit law enforcement to monitor HENDERSON's involvement in illegal activities. Additionally, this order would provide investigating agents the ability to identify other co-conspirators, sources of supply, and effectively track the movements of the holder of the SUBJECT TELEPHONE NUMBER.

Respectfully submitted,

Jonathan F. Earle
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to before me on July 21, 2017

_____/s/_____
The Hon. John R. Anderson
United States Magistrate Judge

9